**CourtView Justice Solutions**                                    Bristol County

## Civil Case Summary

**1873CV00845 Killian, Gail Barbara vs. Fanning, Stephen Thomas**

### Case Information

**File Date** 09/24/2018
**Case Disposition** Transferred to another Court
**Category**
**Track** A - Average
**Case Status** Closed
**Case Disposition Date** 11/02/2018
**Action** Malpractice - Other
**Case Status Date** 11/02/2018
**Case Judge**
**Session** Civil C (Taunton)

RECEIVED
NOV - 8 2018
BY:_____

### Party Information: 2

| Party Name Party Alias(es) | Party Type | Party Role | Attorney(s) |
|---|---|---|---|
| Killian, Gail Barbara | Plaintiff | | Kaplan, Esq., Wendy Anne |
| Fanning, Stephen Thomas | Defendant | | Nugent, Esq., Mark T Yudysky, Esq., Clark W |

### Alert(s) 0

### Case Schedule: 0  Displaying 0 Records

### Subsequent Actions/Subject: 0

### Service Summary: 0

### Fee Generating: 0

### Linked Case(s): 0

### Financial: 1        Amount Due: .00        A/R Amount Due: .00

| Receipt Number | Date | Received From | Amount Paid |
|---|---|---|---|
| 19244 | 09/24/2018 | Kaplan, Esq., Wendy Anne | 280.00 |

### Ticklers: 0

### DCM: 1

| DCM Track | Effective Date | Tickler | Due Date | Completion Date | Entered By |
|---|---|---|---|---|---|
| A - Average | 09/24/2018 | Service | 12/24/2018 | 11/02/2018 | MANDRADE |
| | | Answer | 01/22/2019 | 11/02/2018 | MANDRADE |
| | | Rule 12/19/20 Served By | 01/22/2019 | 11/02/2018 | MANDRADE |
| | | Rule 12/19/20 Filed By | 02/21/2019 | 11/02/2018 | MANDRADE |
| | | Rule 12/19/20 Heard By | 03/25/2019 | 11/02/2018 | MANDRADE |

| DCM Track | Effective Date | Tickler | Due Date | Completion Date | Entered By |
|---|---|---|---|---|---|
| | | Rule 15 Served By | 11/18/2019 | 11/02/2018 | MANDRADE |
| | | Rule 15 Filed By | 12/18/2019 | 11/02/2018 | MANDRADE |
| | | Rule 15 Heard By | 12/18/2019 | 11/02/2018 | MANDRADE |
| | | Discovery | 09/14/2020 | 11/02/2018 | MANDRADE |
| | | Rule 56 Served By | 10/13/2020 | 11/02/2018 | MANDRADE |
| | | Rule 56 Filed By | 11/12/2020 | 11/02/2018 | MANDRADE |
| | | Final Pre-Trial Conference | 03/12/2021 | 11/02/2018 | MANDRADE |
| | | Judgment | 09/23/2021 | 11/02/2018 | MANDRADE |

## Case Disposition(s): 1

| STATUS | Status Date | Disposition | Disposition Date | Action Code |
|---|---|---|---|---|
| Closed | 11/02/2018 | Transferred to another Court | 11/02/2018 | Malpractice - Other |

## Docket Entries: 14   Displaying 14 Records

| Date | File Ref Nbr | Journal Book | Docket Text | Judge | Amount Due | Image |
|---|---|---|---|---|---|---|
| 11/02/2018 | | | Case transferred to another court United States District Court. | | | |
| 11/02/2018 | 3 | | Notice of Removal to the United States District Court filed by Applies To: Nugent, Esq., Mark T (Attorney) on behalf of Fanning, Stephen Thomas (Defendant); Yudysky, Esq., Clark W (Attorney) on behalf of Fanning, Stephen Thomas (Defendant) (18cv12288) | | | |
| 11/02/2018 | | | Attorney appearance On this date Mark T Nugent, Esq. added as Private Counsel for Defendant Stephen Thomas Fanning | | | |
| 11/02/2018 | | | Attorney appearance On this date Clark W Yudysky, Esq. added as Private Counsel for Defendant Stephen Thomas Fanning | | | |
| 09/25/2018 | | | One Trial case reviewed by Clerk, case to remain in the Superior Court. Judge: Losowski, John F | Losowski, John F | | |
| 09/24/2018 | | | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b Receipt: 19244 Date: 09/24/2018 | | 0.00 | |
| 09/24/2018 | | | Demand for jury trial entered. | | | |
| 09/24/2018 | 2 | | Civil action cover sheet filed. | | | |
| 09/24/2018 | 1 | | Original civil complaint filed. | | | |
| 09/24/2018 | | | Case assigned to: DCM Track A - Average was added on 09/24/2018 | | | |
| 09/24/2018 | | | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 19244 Date: 09/24/2018 | | 0.00 | |
| 09/24/2018 | | | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 19244 Date: 09/24/2018 | | 0.00 | |
| 09/24/2018 | | | Civil Filing Fee (per Plaintiff) Receipt: 19244 Date: 09/24/2018 | | 0.00 | |
| 09/24/2018 | | | Attorney appearance On this date Wendy Anne Kaplan, Esq. added as Private Counsel for Plaintiff Gail Barbara Killian | | | |

## Case Notes : 0

Copyright © 2018 CourtView Justice Solutions, Inc., an equivant company

True Copy By Photostatic Process
Attest:

*[signature]*

Asst. Clerk of Courts

3

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT
## OF THE TRIAL COURT

**GAIL BARBARA KILLIAN**

v.                                          Civil Action No.: 18-73CV845

**STEPHEN THOMAS FANNING**

BRISTOL. SS SUPERIOR COURT
FILED

## NOTICE OF FILING OF NOTICE OF REMOVAL
## TO THE UNITED STATES DISTRICT COURT

NOV - 2 2018

MARC J. SANTOS. ESQ.
CLERK/MAGISTRATE

TO THE BRISTOL SUPERIOR COURT CLERK:

Please take notice that on November 2, 2018, the above-captioned action has been removed

to the United States District Court for the District of Massachusetts, pursuant to Title 28,

United States Code § 1332. A copy of said Notice of Removal is attached hereto, in accordance

with Title 28, United States Code § 1441(d).

Please take further notice that, pursuant to 28 U.S.C. §1446(d), the filing of defendant's

Notice of Removal effects the removal of this action to the federal court, and this Court is directed

to "proceed no further unless and until the case is remanded." 28 U.S.C. §1446(d).

A True Copy By Photostatic Process
Attest:

_____
Asst. Clerk of Courts

816162

Respectfully submitted,
The Defendant,
STEPHEN THOMAS FANNING,

By His Attorneys,

**MORRISON MAHONEY LLP**



Clark W. Yudysky, Esquire (BBO #538210)
250 Summer Street
Boston, Massachusetts 02210
Tel: (617) 439-7500
Fax: (617) 439-7590
cyudysky@morrisonmahoney.com

Mark T. Nugent, Esquire (BBO #374990)
10 Weybosset Street, Suite 900
Providence, RI  02903-7141
Tel:  (401) 331-4660
Fax:  (401) 351-4420
mnugent@morrisonmahoney.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was mailed, postage prepaid, to the following on this 2nd day of November, 2018.

Wendy A. Kaplan, Esquire
1530 Beacon #730
Brookline, MA 02446

816162



## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

**GAIL BARBARA KILLIAN**

v.                                                     Civil Action No.: *18 - 12288*

**STEPHEN THOMAS FANNING**                             Removed from the
                                                       Bristol County Superior Court,
                                                       Commonwealth of Massachusetts
                                                       Civil Action No. 18-73CV845

### NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, the defendant, Stephen Thomas Fanning (hereinafter "Fanning"), hereby gives notice of his removal of this action to the United States District Court for the District of Massachusetts from the Superior Court of Massachusetts in and for Bristol County, and in support thereof, respectfully states as follows:

1.     Fanning is a defendant in a civil action brought in the Superior Court of the State of Massachusetts, in and for Bristol County, styled as *Gail Barbara Killian v. Stephen Thomas Fanning*, Civil Action No. 18-73cv845 (the "Killian Action").

2.     Fanning was served with a copy of the Summons and Complaint in the Killian Action on October 17, 2018. A true copy of the Summons and Complaint in the Killian Action, as served on Fanning, is attached to this Notice of Removal as Exhibit "A." Fanning's Notice of Removal is filed within thirty (30) days after the receipt by Fanning of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, as required by 28 U.S.C. § 1446(b)(1).

816190

3.      The Killian Action is a suit of a wholly civil nature brought in the Superior Court of the State of Massachusetts, in and for Bristol County.  The United States District Court for the District of Massachusetts is therefore the proper forum and venue to which this action may be removed under the provisions of 28 U.S.C. §§ 101 and 1441(a).

4.      This Court has original jurisdiction to entertain this action because the only parties to this case are citizens of different states and because the plaintiff claims that her potential damages exceed the sum of $75,000, exclusive of interest and costs.  28 U.S.C., §§ 1332(a)(1), 1441(a).  Removal of this action is not prohibited by 28 U.S.C. § 1445.

5.      With respect to diversity of citizenship, the plaintiff is a resident of Seekonk, Massachusetts, County of Bristol.

6.      Defendant Fanning is a resident of Barrington, Rhode Island, and an attorney with a principal place of business in Providence, Rhode Island.

7.      Pursuant to 28 U.S.C. § 1446(d), Defendant Fanning has filed a notice of the filing of this Notice of Removal, attached herewith as Exhibit "B", with the Clerk of the Superior Court of the Commonwealth of Massachusetts, in and for Bristol County.

8.      Pursuant to Local Rule 81.1, Fanning has requested that the Clerk of the Superior Court of the Commonwealth of Massachusetts, in and for Bristol County, provide certified or attested copies of all records and proceedings in the Killian Action and certified or attested copies of all docket entries thereon.  Fanning will cause such attested or certified copies of the state court record to be filed with this Court within twenty eight (28) days hereof as required.

WHEREFORE, Stephen Thomas Fanning respectfully requests that the above-referenced action now pending in the Superior Court of the Commonwealth of Massachusetts, in and for Bristol County, be removed from that Court to the United States District Court for the District of Massachusetts.

Respectfully submitted,
The Defendant,
STEPHEN THOMAS FANNING,

By His Attorneys,

**MORRISON MAHONEY LLP**


/s/ Clark W. Yudysky

Clark W. Yudysky, Esquire (BBO #536210)
250 Summer Street
Boston, Massachusetts 02210
Tel: (617) 439-7500
Fax: (617) 439-7590
cyudysky@morrisonmahoney.com

Mark T. Nugent, Esquire (BBO #374990)
10 Weybosset Street, Suite 900
Providence, RI  02903-7141
Tel:  (401) 331-4660
Fax:  (401) 351-4420
mnugent@morrisonmahoney.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the EFC System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as listed below this 2nd day of November, 2018.

/s/Clark W. Yudysky

-3-

816190

*1.*

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT

Bristol, s.s.

SEP 2 4 2018

|                                         |   |
|-----------------------------------------|---|
| Gail Barbara Killian, Plaintiff         | ) |
|                                         | ) |
| v.                                      | ) |
|                                         | ) |
| Stephen Thomas Fanning, Defendant       | ) |
|                                         | ) |

Docket No. *1873CV00845C*

**COMPLAINT AND JURY DEMAND**

## I.   INTRODUCTION

1. This is a legal malpractice case through which the plaintiff Gail Killian seeks redress for the damages perpetuated by the defendant Stephen Fanning, Esq.  whose negligence severely hurt plaintiff.

## II. PARTIES

2. Gail Barbara Killian ("Plaintiff Killian") is a person of majority age domiciled in Seekonk, Bristol County, Massachusetts.

3. Defendant Stephen Thomas Fanning, Esq. ("Defendant Fanning") is an attorney licensed to practice law in

Massachusetts and in Rhode Island. Fanning advertises on his website that he practice in both Massachusetts and Rhode Island, and he does substantial business in Massachusetts.

### III. STATEMENT OF FACTS

A.  EMPLOYMENT INCIDENTS PROMPTING INITIAL COMPLAINT

   i)  <u>Sexual Harassment of Plaintiff</u>

4. Plaintiff Killian was a long-term successful professional employee of Citizens Bank ("CB") or ("The Bank") in Rhode Island.  She had begun working at CB part time while she was in college.  By the time this action arose, plaintiff had become a Business Banking Officer ("BBO") and an Assistant Vice President of CB.


5. On or about March 20, 2013, the plaintiff was attending an off-site business meeting in a hotel in Boston.  After sending her sexually harassing text messages, William Mello, her direct manager, barged into her hotel room and tried to have sex with her, going so far as to lie on the bed in her room and expose himself.

1

6. Shocked, Killian pleaded with Mello to leave and rebuked his sexual advances.   She was both appalled and frightened by his sexual advances and behavior.

7. Mello then also sent plaintiff sexual text messages afterwards  to which plaintiff did not respond, but rather showed them to a few people in her confidence.

8. Shortly after plaintiff rejected him, Mello began to retaliate against Killian.  He began to routinely take away her most lucrative accounts where her numbers would predictably and substantially decrease, thereby injuring her performance and jeopardizing her job.

9. To further diminish her performance, Mello refused to credit her for high-end sales she had made on behalf of CB.   He attributed these sales to other workers who thereby received the credit.

10. In January,  2014, Killian filed an internal complaint of sexual harassment with Human Resources at CB.  Prior to making this formal complaint , she had made a confidential and

2

anonymous phone call to CB's confidential hotline, detailing the events of Mello's sexual harassment.    Citizens Bank failed to respond to her call.

11. She delayed filing the complaint due to trepidation in making a formal complaint because she knew of other CB employees who had made similar complaints, and were then  terminated.

12. The Bank failed to either thoroughly investigate or remedy her complaint, as it was legally obligated to do so, but instead began its own retaliation against her.

13. Subsequent to filing her complaint,CB took further retaliatory measures against the plaintiff such as obligating her to meet with her harasser, William Mello, both alone and with him, acting as moderator in team meetings the majority from which she was excluded. This resulted in her being de facto isolated from her colleagues.

14. The Bank then intensified its retaliation against plaintiff by placing her on a Performance Improvement Plan ("PIP") authored by her harasser, William Mello.

15. Additionally, a male CB employee, Fred Smith, who worked under Mello, tried to insinuate himself into plaintiff's business relationship with her most lucrative account RJ Connelly, an attorney with a substantial law practice in elder law.

16. The retaliation against her escalated at work.   CB fabricated complaints of mismanagement against Killian's servicing of their Bank's account holders.

17. Since the Bank removed most of the lucrative accounts from Killian, her numbers plummeted.

18. These alleged client complaints were a lie and were a pretext for her Performance Improvement Plan ("PIP") and termination in 2014.

B.   REPRESENTATION OF PLAINTIFF BY DEFENDANT

ii)   <u>Plaintiff retains defendant</u>

19. In March of 2014, the plaintiff and defendant met to discuss her employment-related legal concerns.   She retained

defendant who made the following material representations to her.  He:

   a.  claimed, "I win all my cases."
   b.  claimed that he, "gets a lot of money for my clients".
   c.  claimed he had influential friends at the CB who would help her.

20. When plaintiff initially met with Fanning she expressed apprehension that she might lose her job on account of having made a complaint against Mello.  The progression of Fanning's empty promises went as follows:

21. When plaintiff first meet with attorney Fanning, Plaintiff expressed her general concerns for her job security to which Fanning responded that he had an influential friend at CB and and would work through this person to protect plaintiff.

22. Shortly after retaining defendant, plaintiff was told she would be scheduled for a meeting with management. Just as she had feared.  She contacted Fanning who told her he would write a "strong letter" so that she would not be placed on a PIP.  When she received a specific date and time for this meeting, she again contacted Fanning and urged him to act on her behalf as her attorney.

23. At each stage of her requests, defendant assured plaintiff that he would contact his "friend"; and he would write a "very strong letter" on her behalf which he would send certified mail. Since he had done neither, upon her third request, he told her that he would "hand deliver" this mythical letter.

24. When the meeting between plaintiff and her employer was imminent, plaintiff still had not seen any letter from defendant to CB on her behalf.

25. On the day of the meeting and prior to its commencement, plaintiff urgently contacted defendant, asking him what she should do. He told her, "go to the meeting".

26. To plaintiff's knowledge and belief, defendant never wrote or delivered any kind of letter to CB intended to represent her with the Bank.

27. Plaintiff then attended the meeting where her fears proved correct;: she was placed on a PIP. Moreover, it was her harasser, William Mello, her manager who had written the PIP.

28.  On or about July 2, 2014, defendant filed a complaint of sex discrimination with the Rhode Island Commission on Human Rights ("RICHR") on plaintiff's behalf.  The content of the complaint never once referred to, claimed or documented that plaintiff was the victim of sexual harassment and retaliation.

    iii) <u>Multiple Failures to Contact or Develop Supporting Witnesses</u>.

29. In the course of his  representation, Fanning failed to contact and develop the testimony of friendly witnesses identified by plaintiff who would have provided credible, substantial, corroborative and supportive testimony for the plaintiff's case.

30. One witness in particular was a pivotal and key witness for plaintiff, RJ Connelly.  RJ Connelly. Connelly  was one of the plaintiff's primary clients at CB and one of CB's most lucrative account holders.

31. Plaintiff and Connelly shared a very well-developed and long-standing professional relationship. Citizens Bank had lied

to the plaintiff, the RIHRC and to the federal court, *inter alia*, that RJ Connelly was dissatisfied with the plaintiff's performance and had requested she be removed from his accounts.

32. Based on her strong working relationship with this witness, plaintiff  knew that the Bank's allegations were false. Moreover, the Bank's claim was blatantly untrue as was later confirmed by Connelly's long-delayed deposition. She repeatedly asked defendant numerous times to contact this witness ,which he finally did after her persistence.

33. Defendant's development of  RJ Connelly as a witness fell far below the standards of adequate representation.  First, he failed or refused to contact this witness in a timely fashion, despite plaintiff's repeated supplications to do so.

34. Rather than initially depose him, defendant in fact arranged for Connelly to speak without representation, privately, and alone with the Bank's attorney without plaintiff's knowledge or consent.  When Fanning eventually finally consented to depose Connelly, he apprised the opposing counsel of the witness'  "probable testimony".

35. By forewarning the opposing side, Defendant seriously undermined the impact of plaintiff's key witness by giving CB ample opportunity prepare a defense or minimize Connelly's testimony.

36. Just as plaintiff anticipated, Connelly's deposition narrative strongly supported plaintiff's claims against the Bank on at least three fundamental issues.  First, he testified that plaintiff had done an "excellent job" with his accounts and rather than complain about her,  he in fact had followed her when she briefly left CB and then again when she returned, he continued using her as his account manager. Second, plaintiff had shown him the sexually harassing text messages she had received from Mello both before and after the incident in the hotel room.  Third, Connelly testified that CB employee Fred Smith had insinuated himself on to Connelly's accounts but Connelly had clearly refused and rebuffed Smith's attempts to take over his accounts from plaintiff.

37. The latter part of Connelly's testimony provided a viable vehicle for plaintiff to prove mendacity by CB and to

provide a path to recover substantial punitive damages against CB, however, defendant minimized this testimony and told Killian that he agreed with CB's lawyers who also "hadn't been impressed" as though opposing counsel were likely to express trepidation of an adverse witness.

38. Plaintiff informed defendant of three female colleagues, Kathy Madeiros, Pat Perrino, and Ellen Swanson, who were willing to provide supportive testimony of her claim. He refused or failed to contact any of them, but each was later deposed by the Bank and each gave testimony in plaintiffs favor. Nevertheless, each deponent all gave testimony in plaintiff's favor. The first of these witnesses, Pat Perrino, testified that she had also filed an internal complaint against Mello's sexisim. The second witness, Ellen Swanson, testified that she had viewed some of the sexual texts Mello had sent to plaintiff. The third witness, Kathy Madeiros, along with the other two colleagues testified that Mello's work group was fraught with blatant sexisim where men received deferential treatment in what was commonly referred by employees as "the old boys club".

39. During the discovery phase of Killian's case against CB, defendant failed even to make an attempt to contact the three witnesses. The Bank noticed their depositions and their testimony proved favorable to plaintiff's claim of sexual harassment and gender bias. Each witness testified to the systematic gender bias in Mello's work group in which all of them, and plaintiff were working.

40. During the depositions of each of these three witnesses, defendant sat passively, failing to object, develop a question or cross examine any testimony made by these co-workers. He similarly failed to contact any of the witnesses after they gave their depositions or further develop their evidence, despite the fact that each witness's testimony was strongly supportive of plaintiff's claims of discrimination.

41. While preparing her case with defendant as her attorney, plaintiff identified a male colleague, Gregg Devlin, who had volunteered to testify on her behalf. He was also a member of Mello's work group and would have testified that men were treated more favorably than their women counterparts.

Fanning never contacted this male witness even after
plaintiff pleaded with him to do so, instead telling her that
Devlin would "renege as witnesses always do".

42. Plaintiff also identified a female manager, Kim Dee,
at CB who had personally witnessed and remarked upon Mello's
mistreatment of plaintiff while on a business visit to another
CB branch office.  Defendant failed to contact this witness,
much less depose her.

iv)  <u>Other Discovery Issues</u>

43. Plaintiff had had an incident in which her cell phone
ceased working and the texts from Mello were inadvertently
erased.  Plaintiff repeatedly urged defendant to subpoena the
texts from Verizon which he refused to do. In fact, defendant
had three other means or avenues by which he could have obtained
this crucial evidence, yet he failed to explore any of them.
Specifically, he could have 1)  subpoenaed the telephone records
from telephone provider Verizon; 2)  filed a Rule 34 request for
Production of Documents; or  3)  served a written interrogatory
as Mello's texts had been encrypted on a CB phone, owned and
maintained by Citizens Bank. The result of his failure to demand

production of objective evidence, clearly prejudiced plaintiff's claim.

44. In the course of discovery, plaintiff needed her and Mello's personnel files to prepare for trial.  While defendant requested production of their personnel files, he failed to take any action when CB produced only heavily redacted useless materials.  In addition, defendant failed even to press CB on plaintiff's personnel file although Rhode Island law provides an employee  with a right to see all of her unredacted personnel file within seven (7) days. Redacted documents do not constitute production.  Fanning failed to press CB on this issue;  failed to file a Motion to Compel; and finally failed to use the Rhode Island statute authorizing employees to access their personnel files.

45. When CB served interrogatories on plaintiff, defendant claimed whether by mistake or deliberate misrepresentation that a lawyer is unable to assist a client in answering interrogatories; this leaving Killian to her own devices at this critical moment in her case; Killian had no no legal support when she needed it most.

46. The Bank noticed the depositions of two of plaintiffs health care providers. Defendant negligently failed to contact either, even though plaintiff had alerted him that one of them could provide substantially inaccurate testimony as the provider had a false perception that plaintiff had an alcohol problem.

47. More egregious is how Fanning handled plaintiff's deposition. After receiving notification by email that her deposition was to be continued after the first day, defendant informed plaintiff that the deposition had been cancelled when in fact it had not. Then, a day before the scheduled deposition was to take place, defendant notified opposing counsel that it was cancelled. The Bank responded with a Motion to Compel.

48. Plaintiff was fearful that failing to appear at the deposition would injure her reputation with the Court. Thus, she told defendant she intended to contact CB's counsel and simply explain that her attorney, Fanning advised her not to attend the deposition because, according to him, it was cancelled. Defendant then became irate and threatening with her.

49. During the course of the litigation, CB filed four Motions to Compel. Fanning filed none. Instead, he only filed four motions, all seeking continuances.

v) <u>FMLA</u>

50. Plaintiff's work problems caused her severe emotional anxiety and depression. Two of plaintiff's health care providers recommended she take a leave of absence due to the debilitating stress she was experiencing.

51. Acting upon the providers' advice, plaintiff applied for leave under the Family Medical Leave Act ("FMLA"). At the time she initially applied for FMLA, plaintiff assumed it would be granted.

52. When her FMLA was denied, the distraught plaintiff requested defendant's assistance in filing an appeal. As he was her legal representative, she had a reasonable expectation that he would provide legal services regarding her appeal. In that vein, she advised defendant that one of her health care providers would be unavailable for several months due to surgery and thus would cause a delay in preparing the appeal.

53. Defendant never even contacted any of the health care providers or the insurer. Killian, who was no legal training, and was then left completely on her own to navigate the appeals process which inevitably led to making numerous legal errors, resulting in a denial of her appeal.

54. Defendant's complete inaction with her FMLA appeal and its eventual denial had a profound negative impact on plaintiff's future. CB had a past practice of not terminating employees who were on leave under the FMLA. Killian than renewed her request to defendant Fanning to give her legal assistance on FMLA claim, which he failed to do.

55. At the time plaintiff applied for FMLA, she was 54 years old. Citizens Bank extends a retiree health benefit program to its employees which required an employee to work for the bank for at least 15 years and until they reach the age of 55.

56. Defendant was well aware of this benefit but nonetheless failed to act in conformity with the standard of

competent representation, which caused plaintiff to lose her eligibility for the reduced-cost health care benefit and to lose her eligibility for her pension between the ages 62 to 65 for a total of three years and at a minimum value of $125,000.

57. Plaintiff lost her eligibility for CB retiree benefits because she was fired on the eve of her 55th birthday. Under CB's policy, plaintiff could not have been fired while on FMLA, and would have been retained by the Bank as of her 55th birthday and beyond.

58. Consequently, plaintiff would have received a pension at age 62 and retiree health care benefits. Theses losses included the lower cost retiree health care benefits, and three years of pension eligibility. If she had been granted FMLA, she would have received these benefits.

vi) Court representation

59. Defendant filed plaintiff's original Complaint in Rhode Island state court, but he included an unnecessary and duplicative federal claim in state court, thereby giving opposing counsel the opportunity to remove Killian's case to federal court, which it did.

17

60. Massachusetts and Rhode Island state courts are considered preferred venues for plaintiffs in discrimination cases than is federal court. Federal court has a stricter and narrower construction of anti-discrimination laws than does Massachusetts  or Rhode Island courts, thereby providing more opportunities  for a larger favorable outcome.  Moreover, unlike the Rhode Island and Massachusetts courts, the federal court has a statutory cap on damages and therefore plaintiff lost the opportunity of a substantial damages award.

61. Defendant further failed to file Killian's case as a sexual harassment claim.  In fact, defendant failed to even mention sexual harassment either in the RICHR or the court filings.

62. It is generally more likely to prevail on a sexual harassment case than a gender bias case and the awards are usually higher.  Fanning based the case on gender bias and did not include sexual harassment.  He should and could have included both with all of the original complaints.

vii) <u>Advising client</u>

63.  Defendant failed to advise plaintiff that a MJ's opinion or determination was a *recommendation* and not a final order.  Moreover, defendant failed to advise plaintiff that a MJ's opinion was appealable to the Article III judge.

viii)  <u>Representation before the Magistrate Judge</u>

64. When the Magistrate Judge ("MJ") inquired as to what evidence plaintiff had to support her case, defendant neither offered nor submitted anything to support his client's claim. Although he had access to and knowledge of the testimony of her three female co-workers, and her Bank client, witness RJ Connelly, defendant failed to present and this as well as phone records before the MJ.

65. Despite the testimony of three colleagues, all of whom corroborated mistreatment of women by Mello coupled with Connelly's testimony, Fanning did not present any substantial evidence in Killian's favor.

66. Connelly's testimony in particular would have exploded the Bank's contention that Connelly requested plaintiff's removal from his accounts.

67. His testimony would have included how a male CB employee, Fred Smith, who worked under Mello's supervision, attempted to insinuate himself and take over Connelly's accounts which in turn, would have provided solid evidence of mendacity.

68. Evidence of mendacity could and most likely would  have resulted in an award of substantial punitive damages. The outcome of plaintiff's case was severely compromised by defendant's failures to present a credible claim at each stage of the proceedings.

69. When the MJ asked defendant about Connelly's testimony, Fanning responded to the MJ that this witness would not make much of a difference to the outcome of the case, when in fact it most likely would have altered the outcome of the MJ's opinion and could have resulted in an award of substantial punitive damages.

20

ix)   Coerced settlement

70. Under the *Rules of Professional Conduct 1.2*, and accepted legal practice, it is up to the client -- not the attorney -- to decide when and under what terms to settle a case. An attorney is only authorized to recommend to the client whether to accept a settlement.

71. At the first Settlement Conference defendant attempted to coerce plaintiff to accept a paltry $30,000 settlement.

72. At the third and final settlement conference, plaintiff intended to increase her demand as Connelly's deposition clearly established that the Bank's stated reason for plaintiff's termination was pretextual and further, provided strong and convincing evidence that the Bank had acted with mendacity, against plaintiff, thereby exposing CB to punitive damages.

73. In spite of his client's demands, defendant refused to allow any increase in the settlement amount and further threatened plaintiff's husband Manuel Silva that [he] "would never be allowed in a federal courthouse".

74. Plaintiff Killian had clearly enunciated to defendant Fanning that she was unwilling to accept the settlement offered by CB. She repeatedly informed defendant of her preference to go to trial rather than to accept what she deemed to be a poor settlement. Defendant Fanning coerced plaintiff into signing a settlement she clearly did not want to sign by:

   a. Threatening plaintiff that he would refuse to represent her in court at trial and that she would be alone there without a lawyer.  "I'm not going to court with you; you'll have to go without a lawyer", defendant stated.

   b. Refusing to allow plaintiff or her husband any access to the proposed settlement agreement or to take it home before executing it.

   c. Misinforming plaintiff that she must settle the case by December 31, 2016 or the bank would refuse to pay her any amount of damages.

   d. Misinforming plaintiff that, "nobody wins these cases".

   e. Misrepresenting to plaintiff his intention or ability to ensure her that she would receive reduced cost health care retiree benefits upon retiring at age 55, and then her full CB pension at age 62 instead age 65.

   x)   <u>Defendant's mistreatment of plaintiff</u>

75. Defendant was emotionally abusive towards plaintiff.

He ignored her, *inter alia* by:

   a. Repeatedly failing or refusing to respond to plaintiff's phone calls or emails;

b. Dismissing the weight of co-workers' and client RJ Connelly's accounts of what they had witnessed. Plaintiff made many supplications to defendant to interview these witnesses, however, defendant expressed his refusal to do so by telling plaintiff, "They renege; they always renege".

c. Denigrating plaintiff's experience of sexual harassment and retaliation; castigating and blaming her for the fact that she had been victimized.

d. Making false promises to plaintiff.

e. Verbally abusing and castigating her during the course of his representation.

f. Dismissing plaintiff's input during the course of his representation.

g. Mistreating members of plaintiff's family including her son, sister and husband.

h. Refusing to provide a complete copy of clients file copy, including defendant's work product, to Plaintiff Killian.

### IV. CONCLUSION

76. As a direct and proximate result of defendant's negligence plaintiff has been severely damaged. She lost a considerable portion of the value of her lawsuit; she has lost her retiree benefits from Citizens Banks; she has suffered a dimunation of her professional reputation and earning capacity;. The impact of defendant's poor representation and mistreatment has caused plaintiff to suffer severe injuries to both her physical and her mental health.

77. All damages continue to this date.


WHEREFORE, plaintiff demands that this court;

1) order defendant Stephen Thomas Fanning to pay her substantial

compensatory damages;

2) award plaintiff statutory interest and costs;

3) issue such other relief as this court deems just and proper.


### JURY DEMAND

Plaintiff demands a trial by jury.


Respectfully submitted,


GAIL BARBARA KILLIAN

By her counsel:

Wendy A. Kaplan BBO #259360
1530 Beacon #703
Brookline, MA 02446
(857)218-9889
wendykaplanlaw@gmail

Dated this 21st of September 2018

A True Copy By Photostatic Process
Attest:

Asst. Clerk of Courts

24

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 1873CV00845C | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Gail Barbara Killian

**ADDRESS:** 234 Cross Street
Seekonk, MA 02771

**COUNTY** Bristol

BRISTOL ss. SUPERIOR
FILED
SEP 24 2018

MARC J. SANTOS
CLERK/MAGISTRATE

**DEFENDANT(S):** Stephen Thomas Fanning

**ATTORNEY:** Wendy A. Kaplan

**ADDRESS:** 1530 Beacon Street #703
Brookline, MA 02446

**ADDRESS:** 10 Arnold Street
Barrington, RI 02806

**BBO:**

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

**CODE NO.** B07

**TYPE OF ACTION (specify)** Malpractice (Other)

**TRACK** A

**HAS A JURY CLAIM BEEN MADE?** ☒ YES  ☐ NO

**\*If "Other" please describe:** Defendant was negligent in his legal representation of the plaintiff and coerced her into signing a settlement agreement

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................. $ 6785
2. Total doctor expenses ............................................................... $ 21,870
3. Total chiropractic expenses ....................................................... $ —
4. Total physical therapy expenses ................................................ $ —
5. Total other expenses (describe below) ............ (medication) .......... $ 10000
   Subtotal (A): $ 38,655

B. Documented lost wages and compensation to date ............................. $ 225,000
C. Documented property damages to dated ........................................... $ —
D. Reasonably anticipated future medical and hospital expenses ............... $ 15,000
E. Reasonably anticipated lost wages ................................................... $ 375,000
F. Other documented items of damages (describe below) ......................... $ 140,000
(Lost pension - 125K; lost low-cost health benefits 15K)

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

**TOTAL (A-F):$** 793,655

A True Copy By Photostatic Process
Attest:

[signature]
Asst. Clerk of Courts

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

**TOTAL: $** —

Signature of Attorney/Pro Se Plaintiff: X Wendy A. Kaplan    Date: 1/21/18

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X Wendy Kaplan    Date: 9/21/18